# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WILLIAM BART HUEY, | * |
| Plaintiff, | * |
| vs. | *   Civil Action No. _____ |
| TRAVONTAY LEE DIXON, | * |
| Defendant. | * |

## COMPLAINT
## PARTIES

1. Plaintiff William Bart Huey is an adult citizen of the United States, and is a citizen and resident of the state of Alabama.

2. Defendant Travontay Lee Dixon is, upon information and belief, an adult citizen of the United States, is a citizen of the state of Alabama, residing in Escambia County, Alabama. In 2021, Mr. Dixon was employed as a guard at G.K. Fountain Correctional Facility (FCF), and is party to this action in his individual capacity.

## JURISDICTION AND VENUE

3. This action states claims under 42 USC §1983.

4. This Court therefore has jurisdiction over this action pursuant to 28 USC §1331, in that Mr. Huey's claims arise as questions of federal law.

5. This Court also has jurisdiction over this action pursuant to 28 USC §1343(a)(3), in that Mr. Huey's claims arise to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of

the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

6. All events that give rise to this action occurred in Escambia County, Alabama. Escambia County is located in the Southern District of Alabama.

## FACTS

7. In 2021, Mr. Huey was an inmate at FCF near Atmore, Escambia County, Alabama. Mr. Huey was serving a term of imprisonment as a result of a conviction in Alabama state court.

8. On July 5, 2021, at around 10:45 a.m., Mr. Huey was walking from J Dorm back to his assigned facility, H Dorm. Mr. Huey stopped to receive two Kool-Aid sticks so that he could get his hair cut once he returned to H Dorm.

9. While leaving J Dorm, Mr. Huey encountered Mr. Dixon. Mr. Dixon asked Mr. Huey for the items. Mr. Huey believed Mr. Dixon was joking, and continued on his way to H Dorm.

10. When he got to the H Dorm television room, Mr. Huey gave the items to another inmate so that he could get his hair cut. Mr. Dixon then rounded the corner into the television room and patted Mr. Huey down, but found no contraband items. Mr. Dixon called Mr. Huey a white boy, told Mr. Huey that he (Mr. Huey) was going to lock-up, and said Mr. Huey thought he (Mr. Huey) was slick.

11. Mr. Huey observed two superior officers, Captain Knight and Lieutenant Gray, going into the shift office. Mr. Huey followed those two men.

12. As Mr. Huey was stepping into the shift office, Mr. Dixon grabbed Mr. Huey from behind and slammed Mr. Huey to the ground. Mr. Dixon then sat on Mr. Huey's chest and proceeded to

beat Mr. Huey.

13. Mr. Dixon continued to beat Mr. Huey, while Mr. Huey was on the ground, until he was forced to stop by the two superior officers, Captain Knight and Lieutenant Gray, who were nearby.

14. As a result of Mr. Dixon's attack, Mr. Huey suffered extensive physical injury, including a fractured clavicle, that eventually needed surgery. Also as a result of Mr. Dixon's attack, Mr. Huey endured pain and mental anguish.

### COUNT ONE - VIOLATION OF 42 USC §1983
### VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT BY VIOLATING AN INMATE'S RIGHTS UNDER THE FOURTH AMENDMENT AGAINST USE OF EXCESSIVE FORCE

15. Mr. Huey adopts and alleges all facts described in Paragraphs 1 through 14.

16. Prisoners in state prisons have, under the Fourteenth Amendment to the U.S. Constitution, the same rights under the Fourth Amendment to the U.S. Constitution as anyone else.

17. Among those are a right against the use of excessive force by prison guards, with whom prisoners necessarily have frequent contact.

18. The actions described in the factual resume of this Complaint describe just such use of excessive force by Mr. Dixon.

19. Specifically, Mr. Dixon had no reason to believe that Mr. Huey had committed a crime or violation of prison regulations. Mr. Dixon patted Mr. Huey down, and found no contraband.

20. Mr. Huey posed no threat whatsoever to Mr. Dixon's safety. The attack occurred in a prison, where Mr. Huey was surrounded by prison guards and other officials. In addition, Mr. Huey was

walking away from Mr. Dixon when Mr. Dixon grabbed Mr. Huey from behind and threw Mr. Huey to the ground.

21. Upon information and belief, Mr. Dixon had been disciplined by superior officers for similar conduct in the past.

22. The actions of Mr. Dixon caused Mr. Huey to suffer damages. Those damages include, but are not limited to:

    a. Physical injury, in that Mr. Huey was subjected to physical attack and suffered physical injury. The injuries suffered by Mr. Huey were long-lasting in duration, requiring surgery even six weeks after the attack by Mr. Dixon.

    b. Mental suffering and anguish, in that Mr. Huey was subjected to sneak attack by an individual whose legal duty and responsibility was to keep everyone around him safe.

23. The actions of Mr. Dixon were taken, as outlined and described above, in deliberate, callous disregard of the rights of Mr. Huey. Upon information and belief, this was not the first time Mr. Dixon took it upon himself to inflict physical injury upon an inmate without cause. Hence, punitive damages are sought by Mr. Huey.

**COUNT TWO - VIOLATION OF 42 USC §1983**
**VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS**
**UNDER THE FOURTEENTH AMENDMENT BY VIOLATING AN INMATE'S**
**RIGHTS UNDER THE EIGHTH AMENDMENT AGAINST CRUEL AND**
**UNUSUAL PUNISHMENT THROUGH DELIBERATE INFLICTION OF SERIOUS**
**PHYSICAL INJURY**

24. Mr. Huey adopts and alleges all facts described in Paragraphs 1 through 23.

25. Prisoners being held by the state of Alabama following conviction have, under the

Fourteenth Amendment to the U.S. Constitution, rights under the Eighth Amendment.

26. Among those are a right against cruel and unusual punishment, which encompasses the right to be safe from cruel and deliberate infliction of physical injury through unprovoked and unjustified attack.

27. The actions described in the factual resume of this Complaint describe just such cruel and unusual punishment.

28. Specifically, Mr. Dixon was not authorized by anyone, especially not a court of law, to grab Mr. Huey from behind, slam Mr. Huey to the ground, and beat Mr. Huey until restrained by superior officers.

29. Upon information and belief, Mr. Dixon had been disciplined by superior officers for similar conduct in the past.

30. The actions of Mr. Dixon caused Mr. Huey to suffer damages. Those damages include, but are not limited to:

    a. Physical injury, in that Mr. Huey was subjected to physical attack and suffered physical injury. The injuries suffered by Mr. Huey were long-lasting in duration, requiring surgery even six weeks after the attack by Mr. Dixon.

    b. Mental suffering and anguish, in that Mr. Huey was subjected to sneak attack by an individual whose legal duty and responsibility was to keep everyone around him safe.

31. The actions of Mr. Dixon were taken, as outlined and described above, in reckless or callous disregard of the rights of Mr. Huey. Upon information and belief, this was not the first time Mr. Dixon took it upon himself to inflict physical injury upon an inmate without cause. Hence, punitive damages are sought by Mr. Huey.

WHEREFORE, Plaintiff William Bart Huey demands judgment upon Defendant Travontay Lee Dixon for compensatory damages, punitive damages, attorney's fees and costs, and such other damages as appropriate under U.S. law, in an amount in excess of the jurisdictional minimum of this Court.

**TRIAL BY JURY DEMANDED ON ALL APPROPRIATE ISSUES.**

/s/F. Luke Coley, Jr.
F. LUKE COLEY, JR. (Ala. Lawyer No. COL054)
Attorney for Plaintiff William Bart Huey
Suite 2-516, 3929 Airport Boulevard
Mobile, Alabama 36609-2238
Telephone 251-343-0818
Facsimile 251-343-0882
flcoley@bellsouth.net